## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CANAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | |
| | ) | NO. _____ |
| C.W. MATTHEWS CONTRACTING | ) | |
| COMPANY, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff Canal Insurance Company and files this Complaint

for Declaratory Judgment against Defendant C.W. Matthews Contracting

Company, Inc., stating as follows:

### PRELIMINARY STATEMENT

This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 and

§ 2202, in which Plaintiff Canal Insurance Company ("Canal") seeks a declaration

with respect to its duty to defend and indemnify Defendant C.W. Matthews

Contracting Company, Inc. ("Matthews") in a lawsuit currently pending in the

State Court of Cobb County, Georgia, styled *Sarah Justice v. C.W. Matthews

Contracting Co., Inc.*, No. 19-A-2328 (the "Underlying Lawsuit").  In the

Underlying Lawsuit, plaintiff seeks to recover damages relating to serious bodily injuries caused "solely and proximately" by Matthews' negligence.

Based on review of the relevant contract documents and Georgia law, Canal owes no obligation to Matthews in the Underlying Lawsuit as an "additional insured," nor does Canal have any duty to defend or indemnify Matthews as "indemnitee" pursuant to an indemnification agreement executed by Canal's insured, Powell's Trucking, LLC ("Powell's Trucking"). **Under Georgia's anti-indemnity statutes, O.C.G.A. § 13-8-2 and O.C.G.A. § 40-1-113, the indemnification provision contained in Matthews' contracts with Powell's Trucking—and likely all its contracts with other haulers and motor carriers—is unenforceable as against public policy by purporting to shift the risk of loss for Matthews' own negligence to Powell's Trucking**.

In response to Matthews' demands, Canal has provided a detailed analysis of the contract documents and applicable Georgia law in support of its position that Canal owes no legal obligation to defend or indemnify Matthews with respect to the Underlying Lawsuit.  Matthews, however, has persisted in its demands against Canal, arguing that Canal is "flatly wrong," and going so far as to accuse Canal of denying coverage in bad faith.

Accordingly, there exists an actual controversy between the parties that requires a declaration by this Court.  Until such time as the Court enters a

declaration, Canal remains in a position of uncertainty with respect to its obligations to provide Matthews a defense and indemnification in the Underlying Lawsuit.

## PARTIES

### 1.

Canal is a South Carolina company with principal place of business located at 400 East Stone Avenue, Greenville, South Carolina.

### 2.

Matthews is a Georgia corporation with principal place of business located at 1600 Kenview Drive, NW, Marietta, Georgia.  Matthews may be served by and through its registered agent, Sheldon Karl Fram, at the same address.

## JURISDICTION AND VENUE

### 3.

This declaratory judgment action is brought pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

### 4.

An actual justiciable controversy exists between Canal and Matthews within the meaning of 28 U.S.C. § 2201 regarding Canal's duty to defend and indemnify Matthews in the Underlying Lawsuit, whether as an "additional insured" or as "indemnitee" pursuant to a contract with Canal's insured, Powell's Trucking.

5.

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because (i) the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs, and (ii) there is complete diversity of citizenship between Canal (South Carolina) and Matthews (Georgia).

6.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because the underlying events giving rise to this action occurred in the Northern District of Georgia.  In particular, the loss forming the basis of Matthews' demands against Canal occurred in Cobb County.

## FACTUAL ALLEGATIONS

### A.    **The Underlying Lawsuit**

7.

On July 10, 2019, Sarah Justice, as plaintiff, commenced the Underlying Lawsuit against Matthews to recover damages for injuries that she alleged were "solely and proximately" caused by Matthews.  A copy of the complaint in the Underlying Lawsuit is attached as Exhibit A.

8.

According to the complaint in the Underlying Lawsuit, on or about August 4, 2017, Ms. Justice was operating a tandem truck when she arrived at the cleanout area at Matthews' facility.

9.

While Ms. Justice was at the rear of the truck, an employee of Matthews approached the truck, exchanged a few words with Ms. Justice, and extended a long pole into the truck, stating "This will probably take care of it."  A large slab of asphalt was dislodged by the Matthews employee, shot out of the rear of the truck, striking Ms. Justice and causing her serious injury.

10.

Ms. Justice alleged in her complaint that the Matthews employee left the scene of the accident after instructing her, "Don't tell nobody I was up here.  Don't tell nobody I was up here."

11.

When three or four Matthews employees came upon Ms. Justice approximately ten minutes later, including a plant operator, Ms. Justice implored the employees to call an ambulance, which they did "after some time" and only after first calling Ms. Justice's employer for instructions.

12.

The complaint in the Underlying Lawsuit alleged that Matthews was negligent, including by failing to exercise ordinary care to keep its premises in a safe condition; failing to exercise ordinary care in providing an alternative location for the clean out of beds to occur; and failing to train its employees and promulgating, implementing, and/or enforcing safety procedures to be followed by its employees.

13.

Ms. Justice claims to have suffered serious personal injuries and experienced mental and physical pain and suffering caused "solely and proximately" by Matthews' negligence.

14.

Ms. Justice did not assert any claim or seek any damages against Powell's Trucker, her employer, in the Underlying Lawsuit, nor did she allege any wrongdoing or negligence by Powell's Trucking that contributed to her injuries.

**B.**     **Matthews Demands a Defense and Indemnification**

15.

In a letter dated August 19, 2019, counsel for Matthews provided a copy of the complaint in the Underlying Lawsuit to Jerry Powell, the principal for Powell's Trucking.  The letter tendered Matthews' defense of the lawsuit to Powell's

Trucking and requested that Powell's Trucking indemnify and hold Matthews harmless pursuant to an indemnification provision in the Independent Contract Hauler's Agreement between them, dated October 9, 2006 (the "Hauler's Agreement").

16.

Powell's Trucking notified Canal of Matthews' tender of a defense and demand for indemnification with respect to the Underlying Lawsuit.  In a letter dated October 9, 2019, Canal provided Matthews its analysis of coverage, concluding that Matthews "does not qualify as an insured" under the business auto liability policy that Canal issued to Powell's Trucking, No. PIA08280902 (the "Policy").

17.

With respect to the indemnification agreement in the Hauler's Agreement, Canal concluded that the indemnification provision purporting to require Powell's Trucking to indemnify, defend, and hold Matthews harmless from its own negligence is invalid, citing O.C.G.A. § 40-1-113.

18.

Matthews did not respond or otherwise dispute Canal's determination.

19.

Several months later, however, on June 5, 2020, Matthews filed a Third-Party Complaint against Powell's Trucking.  A copy of the Third-Party Complaint is attached as <u>Exhibit B</u>.

20.

The Third-Party Complaint alleged that Matthews is entitled to indemnity from Powell's Trucking based on a subcontract agreement between Matthews and Powell's Trucking dated April 21, 2016 (the "Subcontract Agreement").

21.

The parties in the Underlying Lawsuit mediated their disputes on December 3, 2020.

22.

When the mediation did not result in a settlement, Matthews sent a renewed demand directly upon Canal in a letter dated December 9, 2020, attached as <u>Exhibit C</u>.  For the first time, Matthews claimed to be an "additional insured" under the Policy based on a Certificate of Liability of Insurance and demanded coverage from Canal.

23.

Unlike its original tender, Matthews' renewed demand relied upon both the Hauler's Agreement and the Subcontract Agreement as grounds for its demand for a defense and indemnification.

24.

Matthews demanded that Canal "immediately" settle the Underlying Lawsuit and threatened a third-party complaint against Canal for bad faith denial of coverage if Canal did not comply with its demands.

## C.   Canal Disputes the Existence of Any Duty to Defend or Indemnify Matthews

25.

In a letter dated December 21, 2020, Canal provided a detailed response to Matthews' demand, attached hereto as Exhibit D.  In the response, Canal disputed Matthews' status as an "additional insured" under the Policy based on the absence of any such endorsement in its records.

26.

Canal also disputed Matthews' entitlement to indemnification under its contracts with Powell's Trucking, citing three reasons.  First, the claims in the Underlying Lawsuit did not trigger the indemnification provisions in the contracts. Second, the indemnification provisions violated public policy under O.C.G.A. §

13-8-2 by purporting to indemnify Matthews for losses caused by its sole negligence.  Third, as a "promisee" who has contracted with the Georgia Department of Transportation to transport property pursuant to a "motor carrier transportation contract," Matthews is prohibited under O.C.G.A. § 40-1-113 as a matter of public policy from enforcing an indemnification provision that has the effect of shielding itself from its own negligence.

27.

Although Canal maintained in its response that it has no duty to defend or indemnify Matthews with respect to the Underlying Lawsuit, Canal nonetheless indicated that it was willing to contribute to a settlement with a full reservation of rights.

28.

Canal further stated that an action for declaratory judgment would be necessary in the event an actual controversy remains notwithstanding the detailed contractual and legal analysis provided by Canal.

29.

Although Canal acknowledged the upcoming holidays and stated that it would accommodate a request for additional time to respond, Matthews rejected Canal's overture the very next day in a letter dated December 22, 2020, attached as Exhibit E.

30.

Matthews' response confirmed the existence of an actual controversy, stating that "[I]t is clear that we will never be able to reconcile our positions between ourselves because I frankly think you are flatly wrong."

31.

Matthews also threatened to "get this lawsuit resolved, with or without the help of Canal, and then sue Canal for their bad faith, attorneys' fees, and the amount of the settlement."

32.

Although Canal plans to attend the upcoming mediation of the Underlying Lawsuit (currently scheduled for January 27, 2021), an actual controversy remains as to Canal's legal obligation to contribute to the settlement, if any such settlement is reached among the parties.

33.

Further, as stated in Canal's letter dated December 21, 2020, any amount contributed by Canal to a settlement of the Underlying Lawsuit, if any such settlement is reached, would be subject to a full reservation of rights.

34.

In the event the mediation does not result in a settlement, an actual controversy will remain with respect to Canal's duty to defend, indemnify, and hold Matthews harmless in the Underlying Lawsuit.

## COUNT I – DECLARATORY JUDGMENT
### Matthews' Status as "Additional Insured"

35.

Canal re-alleges and incorporates paragraphs 1-34 by reference.

36.

An actual controversy exists between Canal and Matthews regarding Matthews' status as an "additional insured" under the Policy.

37.

Matthews relies upon a Certificate of Liability Insurance (the "Certificate") in support of its purported status as an "additional insured."  (Matthews included a copy of the Certificate with its December 9, 2020 letter, attached as Exhibit C.)

38.

Canal disputes Matthews' status as an "additional insured."  The Certificate, which identified Matthews only as the "CERTIFICATE HOLDER," included a prominent disclaimer at the top of the document, stating as follows:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF
> INFORMATION ONLY AND CONFERS NO RIGHTS

> UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT . . . AMEND, EXTEND, OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S) . . . AND THE CERTIFICATE HOLDER.

39.

For avoidance of any doubt, the Certificate included another disclaimer immediately below clarifying the meaning of "additional insured," as follows:

> IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. . . . A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

40.

Notwithstanding this clear language, Matthews has asserted that Canal's position is "flatly wrong." Despite Canal's citations to well-settled Georgia law, Matthews has repeated its threats of a claim for bad faith denial of coverage based on its purported status as an "additional insured," thereby giving rise to an actual controversy with respect to Canal's obligation to settle the Underlying Lawsuit, and/or defend and indemnify Matthews in the Underlying Lawsuit if no settlement is reached.

41.

WHEREFORE, Canal respectfully requests this Court enter a judgment determining and declaring the rights, duties and obligations of Canal with respect to Matthews' status as an "additional insured," including the following:

A.   That a Certificate stating that it was issued for informational purposes does not create any right to coverage in favor of Matthews as an "additional insured;"

B.   That the Certificate is insufficient to create liability not created by the Policy and never assumed by Canal under the terms of the Policy;

C.   That Matthews cannot rely on the Certificate to establish status as an "additional insured;"

D.   In the event a settlement of the Underlying Lawsuit is reached, that Canal has no obligation to contribute any amount to such settlement (and, conversely, that Canal is entitled to recover from Matthews any and all amounts contributed by Canal towards the settlement);

E.   Any further declarations and relief as the Court deems proper and necessary.

## COUNT II – DECLARATORY JUDGMENT
### The Indemnification Provisions under the Hauler's Agreement and Subcontract Agreement are not Triggered by the Claims Asserted in the Underlying Lawsuit

42.

Canal re-alleges and incorporates paragraphs 1-34 by reference.

43.

An actual controversy exists between Canal and Matthews with respect to the applicability and scope of the indemnification provisions in the Hauler's Agreement and the Subcontract Agreement.

44.

In the Third-Party Complaint, Matthews asserted a right to a defense and indemnification pursuant only to the Subcontract Agreement executed by Powell's Trucking, dated April 21, 2016.  (Third-Party Compl. ¶¶ 5, 7, 10, 11) (Exhibit B.)

45.

In its letter to Canal dated December 9, 2020, however, Matthews purports to rely on both the Hauler's Agreement and the Subcontract Agreement as a basis for demanding indemnification.  (Exhibit C.)

46.

Assuming that Matthews is entitled to rely on both the Hauler's Agreement and Subcontract Agreement (which it cannot do), the indemnification provisions in

both contracts are narrow in scope and not triggered by the allegations in the Underlying Lawsuit.

47.

The indemnification provisions in both the Hauler's Agreement and Subcontract Agreement cover only those claims asserted "by reason of" the performance or non-performance by Powell's Trucking of its contractual duties:

> Hauler's Agreement:
>
> It is further agreed and understood that HAULER will indemnify and save harmless COMPANY from any and all claims of whatsoever kind and nature which might be **asserted** against COMPANY **by reason of** the performance or non-performance of Hauler's duties**,** for which his services are engaged by COMPANY . . .
>
> Subcontract Agreement:
>
> Subcontractor agrees to indemnify and save harmless Prime from any and all claims of whatsoever kind and nature which might be **asserted** against Prime **by reason of** the performance or non-performance of this Subcontract . . .

(Hauler's Agreement §V; Subcontract Agreement § 7) (emphasis added).  (A copy of the Hauler's Agreement and Subcontract Agreement was enclosed with Matthews' letter to Canal dated December 9, 2020, attached as Exhibit C.)

48.

In the Underlying Lawsuit, plaintiff does not allege any of her injuries were "by reason of" the performance (or non-performance) of Powell's Trucking's

-16-

contractual duties, as required to trigger the indemnification provisions in the

Hauler's Agreement or the Subcontract Agreement.

49.

Instead, the plaintiff in the Underlying Lawsuit alleged negligence **solely**

against Matthews, as follows:

- "On the above referenced date, [Matthews] failed to provide a safe premise by providing appropriate lighting."

- "[Matthews] was negligent in training its agents and employees and in failing to promulgate, implement and/or enforce adequate safety procedures to be followed by its employees, including the employees described herein."

- "Further, the [Matthews'] employees acted recklessly and negligently in striking the asphalt while the bed of the truck was in the incline position without first warning the Plaintiff."

- "As a direct and proximate result of [Matthews'] negligence, the Plaintiff will incur future medical expenses in an amount to be proven at trial, for the treatment of the injuries caused **solely** and proximately by the Defendant's negligence."

- "The direct and proximate cause of the injuries and damages sustained by Plaintiff as alleged above was the negligence of [Matthews] in failing to exercise ordinary care in keeping the premises of the Big Creek location in a safe condition and the negligence of Defendant's agents and employees as described herein."

(Compl. ¶¶ 20, 24, 25, 28, 31) (Exhibit A).

50.

As made clear by the allegations in the Underlying Lawsuit, the claims asserted against Matthews were not "by reason of" the actions of Powell's Trucking. Indeed, the complaint is devoid of any allegations of wrongdoing against Powell's Trucking.

51.

Although Canal emphasized the narrow scope of the indemnification provisions in its letter dated December 21, 2020, Matthews has continued to demand a defense and indemnification from Canal, thereby giving rise to an actual controversy with respect to Canal's obligation to settle the Underlying Lawsuit, and/or defend and indemnify Matthews in the Underlying Lawsuit, if no settlement is reached.

52.

WHEREFORE, Canal respectfully requests this Court enter a judgment determining and declaring the rights, duties and obligations of Canal with respect to the indemnification provisions in the Hauler's Agreement and Subcontract Agreement, including the following:

A.    That the Subcontract Agreement, the only contract identified in the Third-Party Complaint, determines whether Canal is required to

provide a duty to defend or indemnify Matthews in the Underlying Lawsuit.

B.    That Canal is entitled to rely on the allegations in the complaint in the Underlying Lawsuit to determine whether the duty to defend and indemnify has been triggered;

C.    That the claims asserted against Matthews in the Underlying Complaint are not "by reason of" any conduct by Powell's Trucking, as required to trigger the indemnification provisions under the Subcontract Agreement (or the Hauler's Agreement, if determined to be the operative contract).

D.    In the event a settlement of the Underlying Lawsuit is reached, that Canal has no obligation to indemnify Matthews for amounts paid by it towards the settlement (and, conversely, that Canal is entitled to recover from Matthews any and all amounts contributed by Canal towards any settlement);

E.    Any further declarations and relief as the Court deems proper and necessary.

## COUNT III – DECLARATORY JUDGMENT
### The Indemnification Provisions under the Hauler's Agreement and Subcontract Agreement are Unenforceable and Violate Public Policy Under Georgia's Anti-Indemnity Statutes

53.

Canal re-alleges and incorporates paragraphs 1-34 by reference.

54.

In the event the sole negligence of Matthews is sufficient to trigger the indemnification provisions in the Subcontract Agreement and/or Hauler's Agreement, the indemnification provisions are unenforceable and violate public policy.

55.

The public policy of Georgia "is reluctant to cast the burden for negligent actions upon those who are not actually at fault." *Ryder Integrated Logistics, Inc. v. Bellsouth*, 277 Ga. App. 679 (2006).

56.

In the context of construction contracts, the public policy against indemnification for losses caused by an indemnitee's own negligence is codified in O.C.G.A. § 13-8-2(b), which prohibits indemnification agreements that purport to shift responsibility for losses "arising out of bodily injury to persons . . . **resulting**

**from the sole negligence of the indemnitee**, or its . . . officers, agents, or employees." (Emphasis added).

57.

The indemnification provision in both the Hauler's Agreement and Subcontract Agreement by their express terms violate O.C.G.A. § 13-8-2(b) by purporting to hold Powell's Trucking responsible for damages that include "those damages arising from accidents and occurrences occasioned or contributed to by the negligence, **sole** or concurrent to any degree, of [Matthews], his sub-contractors, agents, servants or employees."

58.

In the context of motor carriers, Georgia has also enacted an anti-indemnity statute to protect downstream parties, like truckers with little or no bargaining power, from absorbing most of the risk. Georgia's motor-carrier anti-indemnity statute is codified in O.C.G.A. § 41-1-113(b) and prohibits as against public policy any provision contained in or affecting a "motor carrier transportation contract" that purports to indemnify a "promisee" from liabilities for loss or damage resulting from its own negligence.

59.

Both the Hauler's Agreement and Subcontract Agreement qualify as a "motor carrier transportation contract," as defined under O.C.G.A. § 40-1-

113(a)(1)(A), pursuant to which Matthews agreed to compensate Powell's

Trucking for hauling services, including in connection with Matthew's

performance of its contract with the Georgia Department of Transportation (DOT).

60.

Matthews falls within the definition of "promisee" under O.C.G.A. § 40-1-

113(a)(2) who may not seek indemnification for its own negligence.  Matthews is a

party to a contract with the Georgia DOT, pursuant to which Matthews promised to

provide transportation of property in connection with the project, including asphalt,

which Matthews, in turn, contracted with Powell's Trucking and other motor

carriers to deliver.

61.

Matthews, as a non-motor carrier, cannot shield itself from liability by

forcing the downstream motor carrier parties such as Powell's Trucking, to absorb

all the risk.  This is precisely the situation that O.C.G.A. § 40-1-113 was intended

to prohibit as against Georgia public policy

62.

Despite the express prohibition set forth in O.C.G.A. § 13-8-2(b) and

O.C.G.A. § 40-1-113(b), which Canal outlined in detail for Matthews in its letter

dated December 21, 2020, Matthews has persisted in its demands for

indemnification pursuant to the Hauler's Agreement and Subcontracts Agreement,

giving rise to an actual controversy with respect to Canal's obligation to settle the Underlying Lawsuit, and/or defend and indemnify Matthews if no settlement is reached.

63.

WHEREFORE, Canal respectfully requests this Court enter a judgment determining and declaring the rights, duties and obligations of Canal with respect to the enforceability of the indemnification provisions in the Hauler's Agreement and Subcontract Agreement, including the following:

A.     That, to the extent the Underlying Lawsuit triggered the indemnification provision in the Subcontract Agreement (or the Hauler's Agreement, as the case may be), the indemnification provision is unenforceable and violates public policy pursuant to O.C.G.A. § 13-8-2(b);

B.     That, to the extent the Underlying Lawsuit triggered the indemnification provision in the Subcontract Agreement (or the Hauler's Agreement, as the case may be), the indemnification provision is unenforceable and violate public policy pursuant to O.C.G.A. § 41-1-113(b);

C.     In the event a settlement of the Underlying Lawsuit is reached, that Canal has no obligation to indemnify Matthews for amounts paid by it

-23-

towards the settlement (and, conversely, that Canal is entitled to recover from Matthews any and all amounts contributed by Canal towards any settlement);

D.      Any further declarations and relief as the Court deems proper and necessary.

This 11th day of January, 2021.

> */s/ Jeremy U. Littlefield*
> Jeremy U. Littlefield
> Georgia Bar No. 141539
> jlittlefield@robbinsfirm.com
> Robbins Ross Alloy Belinfante Littlefield LLC
> 500 14th Street, N.W.
> Atlanta, Georgia 30318
> Telephone:   (678) 701-9381
>
> *Attorney for Canal Insurance Company*
> *and Canal Indemnity Company*