# EXHIBIT A

EFILED IN OFFICE
CLERK OF STATE COURT
COBB COUNTY, GEORGIA
**19-A-2328**
JUL 10, 2019 01:13 PM

Angie T. Davis, Clerk of State Court
Cobb County, Georgia

IN THE STATE COURT OF THE COUNTY OF COBB
STATE OF GEORGIA

| | |
|---|---|
| SARAH JUSTICE,<br>Plaintiff<br><br>v.<br><br>C.W. MATTHEWS CONTRACTING CO., INC.,<br><br>Defendant | Civil Action No. |

## COMPLAINT FOR DAMAGES

COMES NOW, Sarah Justice, Plaintiff in the above-styled action and files this Complaint and in support thereof shows the Court the following:

1.

Plaintiff Sarah Justice is a resident of Habersham County, Georgia.

2.

Defendant C.W. Matthews Contracting Co., Inc., (hereinafter "Matthews") is a domestic profit corporation doing business in the state of Georgia and is subject to the venue and jurisdiction of this Court by virtue of the facts hereinafter alleged. The registered agent is Sheldon Karl Fram and he may be served with process at 1600 Kenview Drive, N.W., Marietta, Georgia 30060 (Cobb County).

3.

At all times pertinent hereto, certain individuals who work for and/or were employed with Defendant Matthews at its Big Creek location in Suwanee, Georgia, were acting in their authorized capacity as agents and employees of Defendant Matthews within the scope and course of their employment and/or under the direction and supervision of Defendant Matthews so that all negligent acts and omissions alleged against these individuals are imputable to the Defendant Matthews under the doctrine of *respondeat superior* and this Defendant is vicariously liable therefore.

4.

On or about August 4, 2017, Plaintiff Sarah Justice was operating a tandem dump truck for her employer, Powell Trucking, when she was instructed to proceed to the Big Creek facility owned and operated by Defendant Matthews.

5.

Plaintiff Sarah Justice was on the premises at the Big Creek location as an invitee.

6.

As was usual and customary, the Plaintiff drove her truck onto the scales operated by Matthews.

7.

The truck being operated by the Plaintiff is commonly identified as truck "JPT37."

8.

After pulling onto the scales, an employee of Defendant Matthews transmitted a message over CB Radio to the Plaintiff as follows: "JPT37, you're on hold. You might want to go to the clean out area and check your bed."

9.

The Plaintiff then drove her truck to the area commonly known as the clean out area. The clean out area was completely unlit without any artificial lighting being provided by the Defendant. The time was after 8 p.m. and there was little to no natural light.

10.

The Plaintiff parked her truck in the clean out area and raised the bed of her truck. The Plaintiff then exited the truck with two battery operated lights, one being placed on her shirt and one being held in her hand. The Plaintiff next walked to the rear of her truck and leaned in between the opened tailgate and the rear of the bed to view the bed of the truck.

11.

At that time, an employee of Defendant approached the Plaintiff on foot on the passenger side of her truck, startling the Plaintiff.

12.

The Plaintiff and the employee exchanged a few words when the employee extended a long pole or similar device into the truck and stated, "This will probably take care of it."

13.

Immediately, and without warning, a large slab of asphalt in the bed of the Plaintiff's truck was dislodged by the employee's actions and the asphalt shot out of the rear of the truck, striking the Plaintiff, causing her serious injury.

14.

The asphalt struck the Plaintiff in her abdomen. The force was so great that the Plaintiff was pushed and twisted backwards causing the Plaintiff to strike the tailgate with her shoulder, elbow, and hip. The asphalt then dropped on top of the Plaintiff's foot, pinning her leg to the ground.

15.

The employee instructed the Plaintiff, "Don't tell nobody I was up here. Don't tell nobody I was up here."

16.

The Plaintiff implored this employee to get her some assistance, and he left.

17.

Approximately ten minutes later, three or four employees of the Defendant Matthews arrived at the Plaintiff's location, one of whom was known as the plant operator. The Plaintiff asked the plant operator to call an ambulance. The plant operator responded, "I need to call your boss first and see if he wants us to take you to the hospital."

18.

The Plaintiff continued to implore the employees to call for an ambulance. After some time, the plant operator was able to reach the Plaintiff's employer, and then the plant operator called 911 for an ambulance.

19.

Defendant Matthews encouraged and invited members of the public, including the Plaintiff to enter its premises, and they implied and represented that the Defendant had used reasonable care to keep its premises in a safe condition.

20.

On the above referenced date, the Defendant failed to provide a safe premise by providing appropriate lighting.

21.

On the above referenced date, the Defendant's employees specifically directed the Plaintiff to this unsafe location.

22.

Defendant Matthews had a duty to exercise ordinary care to keep its premises in a safe condition, including the clean out area where the Plaintiff was directed to inspect her truck.

23.

Defendant Matthews negligently failed to exercise ordinary care in providing an alternative location for the clean out of beds to occur.

24.

Defendant Matthews was negligent in training its agents and employees and in failing to promulgate, implement and/or enforce adequate safety procedures to be followed by its employees, including the employees described herein.

25.

Further, the Defendant's employee acted recklessly and negligently in striking the asphalt while the bed of the truck was in an incline position without first warning the Plaintiff.

26.

At all times pertinent hereto, the Plaintiff exercised reasonable care for her own safety.

27.

As a direct and proximate result of the negligence alleged herein, the Plaintiff incurred significant medical expenses, lost wages, amputation, and other special damages for which she brings this action to recover.

28.

As a direct and proximate result of the Defendant's negligence, the Plaintiff will incur future medical expenses in an amount to be proven at trial, for the treatment of the injuries caused solely and proximately by the Defendant's negligence.

29.

As a further direct result of the negligence alleged herein, the Plaintiff suffered serious personal injuries and has experienced mental and physical pain and suffering, past, present, and future and has suffered other damage for which she brings this action to recover.

30.

As a further and direct result of her injuries, the Plaintiff underwent surgery, sustained an amputation and has sustained a permanent partial disability.

31.

The direct and proximate cause of the injuries and damages sustained by Plaintiff as alleged above was the negligence of Defendant Matthews in failing to exercise ordinary care in keeping the premises of its Big Creek location in a safe condition and the negligence of Defendant's agents and employees as described herein.

32.

The Plaintiff seeks to recover full and adequate compensation for the damages caused by the Defendant, including past, present, and future pain and suffering; all past, present, and future medical and hospital expenses; past and future lost wages; and any other damages permitted under law.

WHEREFORE, Plaintiff demands a trial by jury and judgment against Defendant for an amount that is fair and equitable as judged by the enlightened conscious of an impartial jury and for the costs of this action and for such other relief as may seem just and equitable to this Court.

Respectfully submitted,

CHRISTOPHER A. JONES, LLC

/s/ Christopher A. Jones
Christopher A. Jones
Georgia Bar No. 399311
Attorney for Plaintiff

P.O. Box 1250
Cleveland, GA 30528
706-865-1829 (phone)
706-865-1730 (fax)
chris@ngalaw.com